IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BRYCE FRANKLIN,

    Plaintiff,

v.                                                             No. 1:19-cv-00899-KWR-SMV

AMANDA ANAYA, KARL DOUGLAS,
THE GEO GROUP, and the NEW
MEXICO DEPARMENT OF CORRECTIONS,

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on the civil complaint filed by Plaintiff Bryce Franklin in the First Judicial District Court, County of Santa Fe, State of New Mexico, and removed to this Court by Defendants. (Doc. 1-1).

I.     Background.

The following facts are taken from Plaintiff's complaint and the attachments thereto. (Doc. 1-1). For the limited purpose of this ruling, the Court assumes, without deciding, that the alleged facts are true.

Plaintiff is a state prisoner in the custody of the New Mexico Corrections Department. ("NMCD"). (Doc. 1-1 at 1). In the timeframe relevant to this Complaint, Plaintiff was housed at the Northeast New Mexico Correctional Facility. (Doc. 1-1 at 2). Defendant Karl Douglas is the Lieutenant of security at Northeast New Mexico Correctional Facility. (Doc. 1-1 at 3) Defendant Amanda Anaya is a classification officer there. (Id.) The facility is managed by a private entity, GEO Group, under a contract with the City of Clayton, New Mexico. (Id.)

At a prison disciplinary proceeding held on February 28, 2017, Plaintiff was "convicted"

for possession of escape paraphernalia. (Doc. 1-1 at 5). According to NMCD policy, possession of escape paraphernalia results in a mandatory referral to the Predatory Behavior Management Program (PBMP), which is a "behavioral based program for inmates requiring enhanced supervision." (Doc. 1-1 at 4-5, 13, 17).

On March 1, 2017, Plaintiff was notified of his mandatory referral to PBMP. (Doc. 1-1 at 5). NMCD policy provides that a Predatory Behavior Management Referral Committee (the "Referral Committee") (which is tasked with confirming that the inmate meets the PBMP referral criteria and verifying the supporting documentation) "must take place within five working days of the referral notification." (Doc. 1-1 at 5, 19). Though (it alleged that) an extension of this time limit was not granted in writing, Plaintiff did not meet with the Referral Committee until April 8, 2017—well more than five days after he received notice of the referral. (Doc. 1-1 at 6).

The Referral Committee was comprised of Karl Douglas (one of three NMCD employees involved in the search of Plaintiff's during which the the escape paraphernalia that led to the disciplinary proceedings was discovered) and Amanda Anaya. (Doc. 1-1 at 6, 33).  Anaya and Douglas allegedly advised Plaintiff that his referral to PBMP had already been sent and that he was going to the program "no matter what he did." (Doc. 1-1 at 6).

Before and after his disciplinary proceeding, and prior to being transferred to PBMP, Plaintiff was held in restrictive housing from January 31, 2017 to June 14, 2017. (Doc. 1-1 at 6).

Plaintiff was housed in PBMP from mid-June 2017 until February 2019. (Doc. 1-1 at 7). In PBMP,[1] Plaintiff alleges that he was locked in a cell for 23-24 hours a day, was allowed three showers a week, was allowed to exercise outside of his cell two or three times a week and had no contact with other prisoners. (Doc. 1-1 at 4, 11). Further, he was allegedly deprived of most of his

---

[1] To which Plaintiff sometimes refers as "solitary confinement." (e.g. Doc. 1-1 at 9, 10).

personal property, he could not work, watch television, attend educational and vocational programs or religious services, engage in sports and recreational activities, and he had to eat his meals alone. (Doc. 1-1 at 11).

In his complaint, Plaintiff contends that his referral to, and confinement under the strictures of, the PBMP and the duration of his confinement in restrictive housing in the months surrounding his PBMP referral were unlawful. He seeks a declaratory judgment stating that "[t]he unlawful confinement in solitary confinement resulting from defendants['] actions" violated his due process rights and the prohibition against cruel and unusual punishment as guaranteed by the Constitutions of the United States and New Mexico. (Doc. 1-1 at 10). He also seeks a declaratory judgment that the Defendants are liable in tort for false imprisonment, negligence, and malicious abuse of process. (Id.) He seeks compensatory and punitive damages against all Defendants under 42 U.S.C. Section 1983 and New Mexico tort law.

While this case was pending, Plaintiff filed a petition for a writ of habeas corpus in this Court alleging, inter alia, a deprivation of due process in connection with the PBMP proceedings at issue here. *See Franklin v. Attorney General of the State of New Mexico*, No. 21-cv-303-RB-KK, at Doc. 1. On July 7, 2022, the Court entered an order requiring the Attorney General for the State of New Mexico to file an answer to the petition. *Id.* at Doc. 10. The response deadline is pending.

## II. Analysis.

### A. Standard of Review.

To avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court may *sua sponte* dismiss a pro se complaint for failure to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6). *Hall v. Bellmon*, 935 F..2d 1106, 1109-10 (10th Cir. 1991). While these standards apply to pro se and counseled litigants alike, *Ogden v. San Juan Cty.*, 32 F.3d 452, 455 (10th Cir. 1994), pro se pleadings are construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. *Hall*, 935 F.2d at 1110.

  B. <u>Plaintiff's Section 1983 Claims are not Viable.</u>

  Plaintiff raises claims under 42 U.S.C. § 1983, which provides a vehicle for the vindication of substantive rights guaranteed by the Constitution and laws of the United States for persons who have been deprived of those rights by a person acting under color of state law. To prevail in a § 1983 claim, a plaintiff must prove the deprivation of a civil right by a 'person' acting under color of state law." *McLaughlin v. Bd. of Trustees*, 215 F.3d 1168, 1172 (10th Cir. 2000). The plaintiff must allege that each government official, through the official's own individual actions, has violated his Constitutional rights. *See Trask v. Franco*, 446 F.3d 1036, 1046 (10th Cir. 1998). There must also be a connection between the official conduct and the Constitutional violation. *See Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008); *Trask*, 446 F.3d at 1046. The complaint must clearly identify "exactly *who* is alleged to have done *what* to *whom*" so that each defendant has notice of the basis of the claims against them, particularly. *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008).

  1. <u>The New Mexico Department of Corrections is not a "Person" Under § 1983.</u>

  Plaintiff has identified the New Mexico Corrections Department ("NMCD") as a defendant in this lawsuit. To the extent that Plaintiff intended to state a claim under § 1983 against the NMCD (it is not clear what NMCD, specifically is alleged to have done in violation of Plaintiff's

rights), any such claim is not cognizable. § 1983 permits claims against a "person" acting under color of state law. It is well-established that the state—and by extension its executive departments and agencies—is excluded from the definition of "person" in the context of § 1983. *Hern v. Crist*, 735 P.2d 1151, 1155 (N.M. Ct. App. 1987) ("[T]he Department of Corrections is not a 'person' within the meaning of Section 1983."); *Wood v. Milyard*, 414 F. App'x 103, 105 (10th Cir. 2011) ("arms of the state" such as state agencies "partake in the State's [sovereign] immunity[.]"). Any §1983 claim against NMCD must be dismissed.

    2. <u>Plaintiff's Claims Against GEO Group are Inadequately Pled</u>.

To the extent Plaintiff seeks to state a claim against GEO group under § 1983 for a deprivation of his rights under the Eight and or Fourteenth Amendments to the United States Constitution,[2] he has not pleaded sufficient facts to support such a claim. To succeed in a § 1983 action against a corporate entity, a plaintiff must prove that a corporate employee or agent, acting in conformity with a policy or custom of the corporation deprived him of his Constitutional rights. *Myers v. Oklahoma Cty. Bd. of Cty. Comm'rs*, 151 F.3d 1313, 1316 (10th Cir. 1998); *Monell v. Dept. of Soc. Servs. of the City of N.Y.*, 436 U.S. 658, 690-95 (1978); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 820 (1985); *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003). "Custom" in this context refers to "persistent and widespread discriminatory practices of state officials" that are not authorized by written law" but "could . . . be so permanent and well settled as to constitute a custom or usage with the force of law." *Monell*, 436 U.S. at 691.

In complaint, Plaintiff alleges conduct by "defendants" that *violated* applicable policies,

---

[2] The Court does not separately analyze Plaintiff's claims under the New Mexico Constitution because the relevant provisions are effectively the same. *See, e.g., State v. Ira*, 43 P.3d 359, 365-66 (N.M. Ct. App. 2002) (disregarding, for the purpose of analysis, whether a "cruel and and unusual punishment" claim arose under the federal or state constitution because the prohibitions in each are nearly identical); *Valdez v. Wal-Mart Stores, Inc.*, 954 P.2d 87, 89-90 (N.M. Ct. App. 1997) (equal protection and due process clauses of the United States and New Mexico Constitutions provide the same protections).

but none that was taken *pursuant to* a policy of GEO Group that resulted in a deprivation of his Constitutional rights. Plaintiff has therefore failed to state a § 1983 claim against GEO Group.

3. <u>Plaintiff Failed to Allege How Individual Defendants Violated his Constitutional Rights.</u>

Plaintiff has identified two individual defendants—Anaya and Douglas. He has failed to identify conduct by either of these individuals that violated his Constitutional rights. Plaintiff's generalized claims that "defendants" violated his rights under Eighth and Fourteenth Amendment do not suffice. *See Walker v. Mohiuddin*, 947 F.3d 1244, 1249-50 (10th Cir. 2020) (A plaintiff must "do more than show that [his] rights were violated or that defendants, as a collective and undifferentiated whole, were responsible for those violations."); *Pahls v. Thomas*, 718 F.3d 1210, 1225-26 (10th Cir. 2013) ("When various officials have taken different actions with respect to a plaintiff, [a] passive-voice [allegation] that his rights 'were violated' will not suffice" nor will an "active-voice yet undifferentiated contention that 'defendants' infringed on his rights."). The complaint therefore fails to state a claim against Douglas or Anaya.

4. <u>Additionally, Plaintiff's Eighth Amendment Claims are Factually Insufficient.</u>

The Eighth Amendment prohibition against cruel and unusual punishment requires prison officials to provide humane conditions of confinement by ensuring inmates receive the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). These necessities include "adequate food, clothing, shelter, sanitation, medical care, and reasonable safety from serious bodily harm." *Id.* at 348; *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008).

To prove that prison conditions amount to cruel and unusual punishment, the plaintiff must satisfy an objective requirement and a subjective requirement. That is, he must prove (1) that the condition complained of is, "objectively, sufficiently serious" that it "results in the denial of the minimal civilized measure of life's necessities"; and (2) that the prison official's state of mind was

one of "deliberate indifference to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). In other words, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to innate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Id.* at 837.

Plaintiff has not alleged that a particular prison official was aware of, but remained deliberately indifferent to, an excessive risk to his health or safety. Nor do Plaintiff's allegations regarding the conditions of PBMP support an inference that his safety was threatened or that he was deprived of adequate food, clothing, shelter, sanitation, or medical care. The conditions that Plaintiff complains of, though restrictive, are comparable to those that have been held not to constitute cruel and unusual punishment. *See, e.g.*, *Ajaj v. United States*, 293 Fed. App'x 575, 582–84 (10th Cir. 2008) (finding conditions such as "lock-down for 23 hours per day," "limitations on ... access to telephones," and "limited ability to exercise outdoors" did not, individually or in concert, amount to an Eighth Amendment violation); *Hill v. Pugh*, 75 Fed. App'x 715, 721 (10th Cir. 2003) (finding no cruel and unusual punishment where inmate was "isolated in his cell twenty-three hours a day for five days a week and twenty-four hours the remaining two days"); *Silverstein v. Fed. Bureau of Prisons*, 559 Fed. App'x 739, 755 (10th Cir. 2014) (finding no violation where plaintiff ate alone, had no phone calls or face-to-face interaction, and only had 10 hours per week of recreation time); *Smith v. Romer*, 1997 WL 57093, at *2 (10th Cir. Feb. 11, 1997) (finding no violation stemming from 23-hour lockdown with meals in cells, limited vocational, educational, and recreational services, and exercise of one hour per day in cell); *Trujillo v. Williams*, 465 F.3d 1210, 1225 n.17 (10th Cir. 2006) (allegations of limited access to education, employment, religious

7

programming, housing assignment, recreation time and equipment, the telephone, and the commissary did not establish a sufficient serious deprivation); *Davenport v. DeRobertis*, 844 F.2d 1310, 1316-17 (7th Cir. 1988) (holding that one shower a week for inmates in segregation is constitutionally sufficient); *Hightower v. Vose*, 1996 WL 516123, at *2 (1st Cir. Sept. 12, 1996) (denial of shower for eight days is not unconstitutional); *Tucker v. Wall*, 2010 WL 322155, at *10 (D.R.I Jan. 27, 2010) (denial of showers and recreation for ten or fourteen days not unconstitutional). Because Plaintiff has failed to allege facts sufficient to satisfy the objective or subjective components of an Eighth Amendment claim, such claim is not cognizable.

   5. <u>The Validity of the Prison Disciplinary Proceedings is Not Properly Before the Court.</u>

  *In Heck v. Humphrey*, 512 U.S. 477, 487 (1994), the United States Supreme Court held that a state prisoner's § 1983 claim that would necessarily imply the invalidity of their conviction or sentence *must be dismissed* "unless [he] can demonstrate that the conviction or sentence has already been invalidated." In other words, before a state prisoner may seek § 1983 damages related to a conviction or sentence, he "must achieve a favorable result in his available state, or federal habeas, opportunities to challenge" it. *Muhammad v. Close*, 540 U.S. 749, 751 (2004). The *Heck* doctrine is intended to prevent a "collateral attack on a conviction through the vehicle of a civil suit." *Heck*, 512 U.S. at 484. In *Edwards v. Balisok*, 520 U.S. 641, 648 (1997), the United States Supreme Court extended the *Heck* doctrine to claims for monetary damages arising from prison disciplinary decisions. *See Cardoso v. Calbone*, 490 F. 3d 1194, 1199 (10th Cir. 2007) (recognizing that the *Heck* doctrine applies to "challenges to punishments imposed as a result of prison disciplinary infractions.").

  To the extent that Plaintiff claims that he was deprived of due process in the prison disciplinary proceedings such that his according punishments were unlawful, these claims are

barred under *Heck* and *Edwards*. The lawfulness and validity of those proceedings (particularly the PBMP referral) are properly before the Court in Plaintiff's habeas petition. Unless and until he prevails in his habeas challenge, Plaintiff will not have a cognizable claim for damages under § 1983 arising from the prison disciplinary proceedings against him.

**C.      Plaintiff's Tort Claims are not Actionable Under the New Mexico Tort Claims Act.**

In Counts 3-5 of his complaint Plaintiff seeks redress under the tort theories of negligence, false imprisonment,[3] and malicious abuse of process.[4] (Doc. 1-1 at 8-9). The state of New Mexico has waived sovereign immunity for specific torts as set forth in the New Mexico Tort Claims Act (NMTCA). *See* NMSA 1978 §§ 41-4-4 through 41-4-12. A tort for which immunity has not been expressly waived in the NMTCA is not actionable against the state, a state entity, or their employees. *Davis v. Bd. of Cty. Commr's of Dona Ana Cty.*, 987 P.2d 1172, 795 (N.M. Ct. App. 1999).

Immunity from liability for the torts identified in Plaintiff's complaint, has been waived for conduct by "law enforcement officers while acting within the scope of their duties." *See* NMSA 1978 § 41-4-12. It is well established, however, that *corrections officers* who hold convicted persons in custody are not "law enforcement officers" such that the waiver of immunity identified in § 41-4-12 applies to their conduct. *Lymon v. Aramark Corp.*, 728 F. Supp. 2d 1222, 1254-56

---

[3] To the extent that it is possible to infer that Plaintiff sought to state Fourth Amendment "false imprisonment" under § 1983, such a claim is unavailable to him, as such a claim is only available to a person who has been imprisoned without legal process. *Mondragon v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008).

[4] Though it is reasonably clear that Plaintiff intended to state a claim for malicious abuse of process, to the extent that he may also or alternatively have intended to state a claim for malicious prosecution under § 1983, the claim would fail. An essential element of malicious prosecution is "termination of the prior criminal proceeding in favor of the accused." *Heck*, 512 U.S. at 485. Unless Plaintiff prevails in his habeas challenge to the prison disciplinary proceedings, he will not be able to satisfy this element.

(D.N.M 2010); *Callaway v. N.M. Dep't of Corrs.*, 875 P.2d 393, 397 (N.M. Ct. App. 1994) (affirming the trial court's determination that corrections officers are not law enforcement officers for purposes waiver of immunity under the NMTCA). To the extent NMCD or its officers committed the torts identified in Counts 2-5, they are protected from liability as a matter of sovereign immunity. The claims will be dismissed accordingly.

**(1) <u>Plaintiff May File an Amended Complaint.</u>**

Generally, pro se plaintiffs should be given a reasonable opportunity to remedy defects in their pleadings. *Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990). The opportunity to amend should be granted unless the amendment would be futile. *Hall*, 935 F.2d at 1109. Accordingly, Plaintiff shall be granted a thirty-day deadline within which to file an amended complaint. If Plaintiff declines to timely amend, the Court may dismiss the case with prejudice.

**IT IS ORDERED:**

(1) Each of the claims set forth in the complaint (**Doc. 1-1**) are **DISMISSED WITHOUT PREJUDICE**; and

(2) Plaintiff is **GRANTED LEAVE** to file an amended complaint **within thirty days of the entry** of this Memorandum Opinion and Order. Failure to do so may result in dismissal of this case without further notice.

**IT IS SO ORDERED.**

_____
**KEA W. RIGGS
UNITED STATES DISTRICT JUDGE**